UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARE ELAINE WARREN; J.F., a minor by and through his Guardian ad Litem ALAN MARK HARARI; and R.F., a minor by and through her Guardian ad Litem ALAN MARK HARARI,<br><br>                              Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO; SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY; POLINSKY CHILDREN'S CENTER; RADY CHILDREN'S HOSPITAL; ALEJANDRA GUTIERREZ; CHRISTINE MORSE; M.D. SHALON NIENOW; and DOES 1-50 Inclusive,<br><br>                              Defendants. | Case No.: 25-CV-1866 TWR (KSC)<br><br>**ORDER (1) DENYING MOTION FOR TEMPORARY RESTRAINING ORDER, (2) GRANTING MOTION TO APPOINT GUARDIAN AD LITEM, (3) DENYING WITHOUT PREJUDICE APPLICATION TO FILE UNDER SEAL, (4) GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, AND (5) DENYING MOTION FOR LEAVE TO FILE REPLY BRIEF**<br><br>(ECF Nos. 3, 4, 5, 6, 7, 22) |

Presently before the Court are Plaintiffs J.F, a minor by and through his guardian ad litem Alan Mark Harari; R.F., a minor by and through her guardian ad litem Alan Mark Harari; and Clare Elaine Warren's Emergency Motion for Temporary Restraining Order ("TRO Mot.," ECF No. 7), as well as Defendant County of San Diego's ("County")

///

1

Response in Opposition to the TRO Motion ("Opp'n," ECF No. 20), Defendant Rady Children's Hospital's Joinder in Defendant County's Opposition ("Joinder," ECF No. 21).

Also before the Court are Plaintiffs' Motion to Appoint Guardian ad Litem (ECF No. 3), Application to File Exhibits Under Seal (ECF No. 4), Amended Application to File Exhibits Under Seal (ECF No. 5), Motion for Leave to File Excess Pages (ECF No. 6), and Motion for Leave to File Reply Brief (ECF No. 22), as well as Defendant County's Response in Opposition to the Amended Application to File Exhibits Under Seal (ECF No. 19).

For the reasons set forth below, the Court **GRANTS** Plaintiffs' Motion to Appoint Guardian ad Litem (ECF No. 3), **GRANTS** Plaintiffs' Motion for Leave to File Excess Pages (ECF No. 6), **DENIES** Plaintiffs' Motion for Leave to File Reply Brief (ECF No. 22); **DENIES WITHOUT PREJUDICE** Plaintiffs' original (ECF No. 4) and Amended (ECF No. 5) Applications to File Exhibits Under Seal, and **DENIES** Plaintiffs' Motion for Temporary Restraining Order (ECF No. 7) in its entirety.

## BACKGROUND[1]

Plaintiff Clare Elaine Warren is the mother and sole legal custodian of Plaintiffs J.F. and R.F., both of whom are minor children. (ECF No. 1 ("Compl.") ¶ 1.) Plaintiffs allege that from 2022 to 2023, Joseph Franco—J.F. and R.F.'s biological father—threatened, assaulted, and stalked Ms. Warren and her children. (*Id.* ¶¶ 29–30.) Although Plaintiffs obtained criminal protective orders, the abuse displaced the family; Ms. Warren and her children bounced between domestic violence shelters before permanently relocating to Los Angeles County. (*Id.* ¶¶ 29, 31, 38–39.)

///

---

[1] Without assuming their veracity, all facts are taken from the Complaint for the purposes of the factual background. *See Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547 (9th Cir. 1986) ("In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" (quoting *Dymo Indus., Inc. v. Tapewriter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964))).

On May 30, 2025, Plaintiffs traveled to San Diego County to meet with the San Diego District Attorney's Office to discuss protective services in light of Mr. Franco's release from prison. (*Id.* ¶ 41.) After the meeting, Ms. Warren and her children visited Ms. Warren's San Diego storage unit. (*Id.* ¶ 43.) Around 10:00 p.m. that evening, police officers responded to a security threat at the storage facility and encountered Ms. Warren and her children inside Ms. Warren's storage unit.[2] (*Id.* ¶¶ 46–47.)

After the officers searched Ms. Warren's vehicle and found ammunition, a gun not registered to Ms. Warren, and "broken pipes," the officers took Ms. Warren into custody. (*Id.* ¶¶ 48–49.) Because the officers could not locate an adult who was available to take custody of J.F. and R.F., the officers took the children to Polinsky Children's Center ("PCC") while Ms. Warren was booked and released from the police station. (*Id.* ¶¶ 40–51.) PCC staff transported J.F. and R.F. to Rady Children's Hospital, where medical staff allegedly examined the children without Ms. Warren's knowledge or consent. (*Id.* ¶¶ 55, 62.)

After her release from custody, Ms. Warren attempted to collect J.F. and R.F. from PCC, but PCC staff refused Ms. Warren access to her children. (*Id.* ¶¶ 56–57.) Ms. Warren's partner, Mark Harari, arrived at PCC to help Ms. Warren retrieve her children, and Ms. Warren summoned law enforcement officers to assist her as well. (*Id.* ¶ 69.) Nevertheless, Ms. Warren was unable to reunite with her children. (*Id.* ¶¶ 70–71, 79–80.) Meanwhile, county officials initiated juvenile proceedings regarding J.F. and R.F.'s custody in PCC. (Opp'n at 6:19–20;[3] ECF No. 20-1 ("Fellman Decl.") ¶ 2.)

On July 23, 2025, Plaintiffs brought this action, in which they assert nine causes of action for violation of federal civil rights, violation of state civil rights, and judicial

---

[2]    The security threat was unrelated to Plaintiffs' presence at the storage facility; the facility's security staff reported an individual unassociated with Ms. Warren or her children. (Compl. ¶ 46.)

[3]    All page-specific citations refer to the page numbers generated by the electronic case filing ("ECF") system located in the top right corner of each document.

deception. (*See generally* Compl.) Four days later, Plaintiffs moved for a temporary restraining order. (*See* TRO Mot.) The Court ordered Plaintiffs to serve the Complaint and the TRO Motion on Defendants and ordered Defendants to respond to the TRO Motion. (ECF No. 9.) Defendant County filed its Opposition to the TRO Motion on August 1, 2025, (*see* Opp'n), and Defendant Rady Children's Hospital filed a Joinder in Defendant County's Opposition, (*see* Joinder).

## MOTION TO APPOINT GUARDIAN AD LITEM

Plaintiffs move to appoint Alan Mark Harari as guardian ad litem for Plaintiffs J.F. and R.F., both of whom are minors. (*See* ECF No. 3.) "District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011); *see also Davis v. Walker*, 745 F.3d 1303, 1310 (9th Cir. 2014). Federal Rule of Civil Procedure 17(c) requires a court to appoint a guardian ad litem or take "whatever measures it deems proper to protect [a minor] during litigation." *United States v. 30.64 Acres of Land*, 795 F.2d 796, 805 (9th Cir. 1986). To protect the interests of J.F. and R.F., the Court **GRANTS** Plaintiffs' Motion to Appoint Guardian ad Litem (ECF No. 3) and **APPOINTS** Alan Mark Harari as guardian ad litem for J.F. and R.F for the purposes of this action.

## MOTION FOR LEAVE TO FILE EXCESS PAGES

In conjunction with their TRO Motion, Plaintiffs filed a Motion for Leave to File Excess Pages. (*See* ECF No. 6.) Specifically, Plaintiffs request leave to file a forty-five-page memorandum of points and authorities—twenty pages more than the page limit—in support of the TRO Motion. (*Id.* at 1:20–25.) Defendant County objects, contending that Plaintiffs have not demonstrated good cause to exceed the page limit and that Defendants are prejudiced by Plaintiffs' overlength brief. (Opp'n at 8:14–9:5.)

Although the Court agrees with Defendant County that the length of Plaintiffs' memorandum prejudiced Defendants—especially considering the expedited nature of the TRO Motion—the Court **GRANTS** Plaintiffs' Motion for Leave to File Excess Pages

/ / /

(ECF No. 6.) Plaintiffs are warned, however, that they must make every effort to comply with the Court's page limits when filing any additional pleadings in this case.

### MOTION FOR LEAVE TO FILE REPLY BRIEF

After Defendant County filed its Opposition, (*see* Opp'n), in which Defendant Rady Children's Hospital joined, (*see* Joinder), Plaintiffs filed a Motion for Leave to File a Reply Brief (ECF No. 22). The Court declines to accept additional briefing from the Parties at this time. Each Party stated its respective position, and additional briefing would unnecessarily delay the Court's ruling on Plaintiffs' request for emergency relief. Accordingly, the Court **DENIES** Plaintiffs' Motion for Leave to File Reply Brief (ECF No. 22).

### APPLICATIONS TO FILE EXHIBITS UNDER SEAL

In support of the TRO Motion, Plaintiffs filed an Application to File Exhibits Under Seal (ECF No. 4), as well as an Amended Application to File Exhibits Under Seal (ECF No. 5) (together, the "Sealing Applications"). Through the Sealing Applications, Plaintiffs seek leave to file under seal 158 exhibits pertaining to, among other things, J.F. and R.F.'s homeschooling program, Joseph Franco's criminal history, J.F. and R.F.'s detention and treatment at PCC, and the ongoing juvenile dependency proceedings in state court. (*See* ECF Nos. 4-1; 5-1.) As part of their request, Plaintiffs ask the Court to address the state court's ruling that Plaintiffs may not file J.F. and R.F.'s juvenile court records in federal court. (*See* ECF No. 5 at 2:15–20, 5:5–8.)

For the reasons set forth below, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' Sealing Applications (ECF Nos. 4, 5), and the Court also clarifies that it cannot disturb the state court's ruling and cannot direct the state court to allow Plaintiffs to file juvenile court records in federal court.

**I.     Motions to Seal**

Plaintiffs have not lodged with the Court copies of the exhibits to be sealed. (*See generally* Docket.) Nevertheless, Plaintiffs argue that the Court should seal the exhibits "because they contain confidential information relating to minor children, including

medical, psychological, educational, law enforcement, and dependency records, as well as photographs, video, and other evidence protected from public disclosure by federal and state law." (ECF No. 5 at 6:11–18 (first citing Fed. R. Civ. P. 5.2(a), 26(c); then citing S.D. Cal. CivLR 79.2; then citing Cal. Welf. & Inst. Code § 827).)

The decision to seal documents is "one best left to the sound discretion of the trial court" upon consideration of "the relevant facts and circumstances of the particular case." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978). Because the underlying motion—Plaintiffs' TRO Motion—is "more than tangentially related to the merits of the case," Plaintiffs must demonstrate a "compelling reason" to seal the exhibits. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096–98, 1102 (9th Cir. 2016).

Undoubtedly, the exhibits described in the Sealing Applications contain sensitive and confidential information relating to J.F. and R.F., two minor children. But because Plaintiffs have not lodged the proposed sealed exhibits, the Court cannot determine whether there exists a compelling reason to seal the entirety of all 158 exhibits. (*See* Civil Standing Order III.C.4; CM/ECF Manual 2.j.) For example, the Court cannot consider whether redactions or partial sealing would adequately protect the children's privacy.

Accordingly, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' Applications to File Exhibits Under Seal (ECF Nos. 4, 5).

## II.  The State Court's Ruling

Pursuant to California Welfare and Institutions Code § 827,[4] Plaintiffs petitioned the state court for permission to file "some of the pages from the Detention and Jurisdiction report" under seal in federal court. (ECF No. 5 at 2:1–6.) The state court denied the petition and warned Plaintiffs' counsel that "any use of information from dependency court in violation of Welfare and Institutions Code § 827 could result in criminal charges and

---

[4]  Under Section 827, only certain parties may view juvenile court records; however, parents can petition the state court for leave to disclose their child's records to a party not enumerated in the statute.

arrest." (*Id.* at 2:8–9; ECF No. 7-2 ("Goldberg Decl.") ¶ 4.) Plaintiffs indicate that they will not lodge the proposed sealed exhibits in federal court unless the Court addresses the state court's denial of Plaintiffs' § 827 petition. (ECF No. 5 at 2:1–3:9.)

Although the Court is authorized to seal the juvenile court records,[5] the Court cautions Plaintiffs that doing so would have no effect on the state court's enforcement of Section 827. Furthermore, to the extent that Plaintiffs seek an order commanding the state court to allow Plaintiffs to file juvenile court records in federal court, the Court lacks the authority to disturb the state court's ruling or to direct the state court's application of state law. Although Plaintiffs are understandably concerned about the state court's admonition, this Court may not properly overrule the state court's denial of Plaintiffs' Section 827 petition, nor can it properly enter an order allowing Plaintiffs' counsel to disregard an order issued by the state court.

In sum, the Court can seal juvenile court records if they are properly lodged, but the Court has no authority or control over the consequences that Plaintiffs may face in state court for filing those juvenile court records in federal court.

/ / /

/ / /

/ / /

---

[5] As Plaintiffs correctly note, federal courts are not bound by Section 827 when applying federal law, such as when settling discovery disputes under federal common law. *See Gonzalez v. Spencer*, 336 F.3d 832, 835 (9th Cir. 2003) (per curiam) (recognizing that "the district court could have ordered disclosure notwithstanding state law"), *abrogated on other grounds by Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Gatlin v. Contra Costa Cnty.*, No. 21-CV-00370-SI, 2025 WL 1070758, at *1 (N.D. Cal. Mar. 31, 2025) ("[A] federal court may order the disclosure of a California juvenile case file during the course of discovery in federal litigation, notwithstanding California's statutory limits on the release of these files."); *K.W. v. Cnty. of Riverside*, No. 5:21-CV-01216-JWH-SHK, 2024 WL 5274617, at *7 (C.D. Cal. Oct. 10, 2024) ("[S]tate laws, including WIC Section 827, do not prohibit this Court from ordering the disclosure of [juvenile case records.]"); *D.C. ex rel. Garter v. Cnty. of San Diego*, No. 3:15-CV-01868 MMA (NLS), 2016 WL 11621269, at *4 (S.D. Cal. Oct. 7, 2016) ("[T]he Court agrees with Plaintiff that it is not bound by state law and that it has the authority to order disclosure of information from the juvenile case files.") Because federal common law governs the sealing procedure in federal court, *see Nixon*, 435 U.S. at 597–99, the Court is not bound by Section 827 when determining whether to seal court records.

## MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs moved for a Temporary Restraining Order and request the following injunctive relief:

1. An order that the children be immediately released to mother or in the alternative to Mark Harari[;]

2. An [o]rder th[at] HHSA [] transfer the case up to Los Angeles where the children reside and that Ashley Gutierrez & Polinsky Center is not to have any further contact with the children or involvement with the case;

3. [An o]rder that the HHSA is enjoined from allowing the children to be detained in the physical custody of either paternal uncle[;]

4. All interviews, conversations, or court proceedings with the children by any defendant, a party to this suit, are to be recorded and submitted under seal to this court upon request, including an order directing defendants to preserve all video and camera evidence from Polinsky from the time the children have been detained there[;]

5. No further medical care of their children is to take place without mother's consent and her physical presence[; and]

6. A private social worker has immediate access to the children for a full evaluation and the Court to pick from three social workers provided by the mother.

(ECF No 7-1 ("Pls.' Mem.") at 48:7–49:4.) Defendant County argues that (1) the domestic relations exception bars the relief that Plaintiffs seek; (2) the Court lacks subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine; (3) the Court should abstain pursuant to the *Younger* abstention doctrine; and (4) the Plaintiffs have not met the standard for the issuance of a temporary restraining order. (*See generally* Opp'n.) For the reasons set forth below, the Court **DENIES** Plaintiffs' Motion for Temporary Restraining Order.

### I. Legal Standard

Federal Rule of Civil Procedure 65 authorizes a trial judge to grant a temporary restraining order under certain circumstances "to preserve the status quo and the rights of

the parties until a final judgment issues in the cause." *See U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

A temporary restraining order "is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *See Sierra On-Line, Inc. v. Phx. Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984)). The status quo in this context "refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy[.]'" *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)).

A party seeking a temporary restraining order "must meet one of two variants of the same standard." *See All. for Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017)). Under the original standard, a plaintiff seeking a temporary restraining order "must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (quoting *City & Cnty. of San Francisco v. U. S. Citizenship & Immigr. Servs.*, 944 F.3d 773, 788–89 (9th Cir. 2019)). The Ninth Circuit also employs an alternative approach, known as the "serious questions" standard or the "sliding scale approach." *All. for Wild Rockies*, 865 F.3d at 1131–32. "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131. As a result, a temporary restraining order can issue "where the likelihood of success is such that "serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor." *See id.* Under either standard, the third and fourth "factors merge

///

when the Government is the opposing party." *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

When deciding whether to grant a temporary restraining order, "the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *See Int'l Molders' & Allied Workers' Loc. Union No. 164*, 799 F.2d at 551 (quoting *Dymo Indus., Inc.*, 326 F.2d at 143). If the Court issues a temporary restraining order, the temporary restraining order "must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).

## II. Analysis

Through the TRO Motion, Plaintiffs primarily seek an order directing PCC to immediately release J.F. and R.F. into the custody of Ms. Warren or Mark Harari. (*See, e.g.,* Pls.' Mem. at 47:18–22, 48:7–11.) Plaintiffs also, however, request several other forms of relief related to the ongoing juvenile dependency proceedings.[6] (Pls.' Mem. at 48:12–49:4.)

Defendants County and Rady Children's Hospital argue, among other things, that the Court must deny Plaintiffs' requested emergency relief pursuant to the domestic relations exception and the *Younger* abstention doctrine. (Opp'n at 9:6–10:3, 11:1–13:9.) Plaintiffs contend that the *Younger* does not apply and maintain that, even if it does, the case falls within the exceptional circumstances exception. (Pls.'s Mem. at 44:24–47:12.) For the following reasons, the Court agrees with Defendants.

/ / /

---

[6] Plaintiffs claim that they are requesting prohibitory injunctive relief rather than mandatory injunctive relief. (Pls.' Mem. at 34:21–26.) Mandatory injunctive relief "is particularly disfavored." *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979). Although some of Plaintiffs' requested relief is prohibitory and would preserve the status quo, e.g., prohibiting Defendant HHSA from placing J.F. and R.F. in the physical custody of either paternal uncle, the Court finds that most of Plaintiffs' requested relief is mandatory. Regardless, the distinction is irrelevant because, as described *infra*, the Court does not reach the merits of the TRO Motion.

### A.  Domestic Relations Exception

The domestic relations exception "divests the federal courts of power to issue divorce, alimony, or child custody decrees." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12–13 (2004) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689 (1992)), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). Pursuant to the exception, "federal courts traditionally decline to exercise jurisdiction in domestic relations cases when the core issue involves the status of parent and child[.]" *Coats v. Woods*, 819 F.2d 236 (9th Cir. 1987); *Peterson v. Babbitt*, 708 F.2d 465, 466 (9th Cir. 1983) ("[T]he whole subject of domestic relations and particularly child custody problems is generally considered a state law matter. . . . There is no subject matter jurisdiction over these types of domestic disputes."). Even if a case raises constitutional issues, the domestic relations exception strips the federal court of jurisdiction when the core of the case is a child custody dispute. *Coats*, 819 F.2d at 237; *Alcala v. Murphy*, No. 2:19-CV-00969-KJM-CKD PS, 2020 WL 2039056, at *2 (E.D. Cal. Apr. 28, 2020).

The present case, "while raising constitutional issues, is at its core a child custody dispute." *See Coats*, 819 F.2d at 237. Plaintiffs request that the Court issue emergency injunctive relief related to the care, custody, and control of J.F. and R.F., notwithstanding ongoing juvenile dependency proceedings. (Pls.' Mem. at 48:7–49:4.) The requested relief would interfere with the parallel state court proceedings—including by terminating the juvenile court case, which is scheduled to proceed to trial on August 5, 2025. (Fellman Decl. ¶¶ 2–6.) Although some forms of requested relief would interfere with the state court proceedings more substantially than would others, all requested injunctive relief implicates "[t]he strong state interest in domestic relations matters, the superior competence of state courts in settling family disputes . . . , and the possibility of incompatible federal and state court decrees[.]" *See Peterson*, 708 F.2d 465, (9th Cir. 1983).

The state court is competent to adjudicate the issues raised by the TRO Motion, including those related to Plaintiffs' constitutional claims. *See Coats*, 819 F.2d at 237. Given the state court's strong interest in deciding child custody cases and their attendant

disputes, the domestic relations exception divests the Court of the ability to properly issue Plaintiffs' requested emergency relief. Accordingly, the Court **DENIES** Plaintiffs' Motion for Temporary Restraining Order (ECF No. 7) in its entirety.

### B. Younger *Abstention Doctrine*

Notwithstanding the Court's finding that the domestic relations exception applies, the Court separately considers the applicability of the *Younger* abstention doctrine. The *Younger* abstention doctrine "forbids federal courts from staying or enjoining pending state court proceedings." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, (9th Cir. 2007) (alterations adopted) (quoting *Younger v. Harris*, 401 U.S. 37, 41 (1971)). "For civil cases, '*Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges.'" *Yelp Inc. v. Paxton*, 137 F.4th 944, 950–51 (9th Cir. 2025) (quoting *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014)).

The Ninth Circuit has held that the *Younger* abstention elements are met when a plaintiff requests that a federal court intervene in ongoing state custody proceedings. *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000) (holding that *Younger* abstention required dismissal of federal action because plaintiffs requested that federal court "vacat[e] existing interlocutory [state court] orders" and issue "a federal injunction directing the future course of the state litigation"). Here, as in *H.C.*, Plaintiffs "desire wholesale federal intervention into an ongoing state domestic dispute." *Id.* at 613. As a result, "[t]his is precisely the type of case suited to *Younger* abstention." *See id.*

In response, Plaintiffs appeal to the exceptional circumstances exception to the *Younger* abstention doctrine. (Pls.' Mem. at 46:4–47:12.) To demonstrate that the exceptional circumstances exception applies, Plaintiffs must make a "showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate[.]" *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423,

435 (1982). Plaintiffs have not made such a showing. Although Plaintiffs allege that Defendants presented fabricated evidence in the juvenile dependency proceedings, (Pls.'s Mem. at 19:10–24:24), the state court is competent to adjudicate such evidentiary disputes. Furthermore, Plaintiffs' allegation that "there is no adequate recourse for [] Plaintiffs to defend their [c]onstitutional rights in the juvenile dependency court," (Pls.' Mem. at 45:17–20), is conclusory and unfounded. A disagreeable ruling does not create exceptional circumstances—Plaintiffs must pursue an appropriate remedy within the state court system.

The requested emergency injunctive relief would interfere with the ongoing juvenile dependency proceedings. Because "[t]his is not the proper business of the federal judiciary[,] . . . *Younger* abstention is appropriate[.]" *H.C.*, 203 F.3d at 613–14. Accordingly, the Court **DENIES** Plaintiffs' Motion for Temporary Restraining Order (ECF No. 7) in its entirety on this second, independent basis.

## CONCLUSION

In light of the foregoing, the Court

(1) **GRANTS** Plaintiffs' Motion to Appoint Guardian ad Litem (ECF No. 3);

(2) **DENIES WITHOUT PREJUDICE** Plaintiffs' Application to File Exhibits Under Seal (ECF No. 4) and Amended Application to File Exhibits Under (ECF No. 5);

(3) **GRANTS** Plaintiffs' Motion for Leave to File Excess Pages (ECF No. 6);

(4) **DENIES** Plaintiffs' Motion for Temporary Restraining Order (ECF No. 7) in its entirety; and

(5) **DENIES** Plaintiffs' Motion for Leave to File Reply Brief (ECF No. 22).

**IT IS SO ORDERED.**

Dated: August 4, 2025

_____
Honorable Todd W. Robinson
United States District Judge